Filed 5/13/16  P. v. Dillard CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068007 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD259924) |
| DAMION RAY DILLARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Law Offices of Simon & Pizarro and David A. Simon, Antony R. Pizarro for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Scott C. Taylor and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Damion Ray Dillard pleaded guilty to assault by means likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count 1), cruelty to a child by inflicting injury (§ 273a, subd. (b); count 2), and possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 3). The trial court sentenced Dillard to the two-year lower prison term on count 1.

On appeal, Dillard contends the rule of *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*),[2] barring prosecution under a general statute if a specific statute applies, precludes his prosecution under count 1 because section 243, subdivision (e)(1) is a specific statute for misdemeanor battery of a spouse that applies to his case. He also asserts violation of the *Williamson* rule deprived him of equal protection under the law and his trial counsel rendered ineffective assistance by failing to raise the *Williamson* rule and equal protection issues below. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On July 4, 2014, at 10:00 p.m., Dillard was driving home from a fireworks show with his wife, Cora Sandoval, and their son. While waiting in traffic, Dillard and Sandoval got into an argument after Sandoval accused Dillard of looking at other women.

---

[1]    All statutory references are to the Penal Code unless otherwise stated.

[2]    Dillard refers to the rule as the "*Swann-Gilbert* rule." (*People v. Gilbert* (1969) 1 Cal.3d 475, 479; *People v. Swann* (1963) 213 Cal.App.2d 447, 449.) The California Supreme Court has referred to this rule as the "*Williamson* rule." (*People v. Murphy* (2011) 52 Cal.4th 81, 86, citing *In re Williamson*, *supra*, 43 Cal.2d at p. 654.) We do so as well, to conform our analysis of the issue to the Supreme Court's usage.

[3]    The facts are derived from the February 2015 preliminary hearing, at which both Sandoval and their son denied that Dillard struck Sandoval.

2

Their son saw the argument from the back seat and asked his mother to stop arguing and yelling. Witnesses waiting in traffic called 911 after seeing Dillard hit Sandoval in the head four or five times, and also reach back to hit someone in the back seat. Officers detained Dillard and searched him, revealing a cigarette package containing a small bag of cocaine. Sandoval neither spoke to police nor allowed police speak to their son.

In March 2015, Dillard pleaded guilty to all counts. The court accepted Dillard's plea and imposed an order requiring him to stay away from Sandoval and their son. At the sentencing hearing, the court denied probation and sentenced Dillard to the lower two-year prison term on count 1. Dillard timely appealed.

DISCUSSION

I. *Dillard's Appeal is Not Procedurally Barred*

As a threshold matter, we address the People's contentions that Dillard's appeal is procedurally barred because (1) his certificate of probable cause did not specify the issues raised in his opening brief and (2) he waived his appellate rights as part of his plea bargain.

A. *Certificate of Probable Cause*

The People contend Dillard's claims regarding the *Williamson* rule, equal protection, and ineffective assistance of counsel are not cognizable on appeal because he did not specify those issues in his statement supporting his request for certificate of probable cause.

Dillard timely filed a pro se notice of appeal challenging the validity of the plea and included a request for certificate of probable cause. Dillard based his request for

3

certificate of probable cause solely on the ground he did not agree to a prison term: "I signed a plea [bargain] for probation and county time but was sentenced to 2 years with half to state prison. I did not sign for prison." The trial court found Dillard showed "reasonable constitutional, jurisdictional, or other grounds for appeal relating to the legality of the proceedings" and certified there was probable cause to appeal.

Section 1237.5 provides in part that "[n]o appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

In general, a defendant may not appeal a judgment of conviction based on a guilty plea unless the defendant has sought and obtained a certificate of probable cause from the trial court. (§ 1237.5; Cal. Rules of Court, rule 8.304(b); *People v. Arriaga* (2014) 58 Cal.4th 950, 958; *People v. Johnson* (2009) 47 Cal.4th 668, 678.) The purpose of this requirement is to preclude appeals that do not raise issues cognizable after a guilty plea or those that are "wholly frivolous" (*In re Chavez* (2003) 30 Cal.4th 643, 649-651) or vexatious. (*People v. Buttram* (2003) 30 Cal.4th 773, 781.) If the defendant obtains a certificate of probable cause they may raise issues concerning the jurisdiction of the court or the legality of the plea proceedings. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178.)

4

Dillard's failure to specify the claims in his statement does not necessarily preclude appellate review. "The trial court must issue the certificate if the defendant's statement under section 1237.5 presents 'any cognizable issue for appeal which is not *clearly* frivolous and vexatious . . . .' [Citation.] The defendant's statement need not list every potential issue; if the trial court issues the certificate based on even a single nonfrivolous claim, the defendant may raise all of his or her claims on appeal—those that require a certificate as well as those that do not—*even if they were not identified in the statement filed with the trial court*." (*People v. Johnson*, *supra*, 47 Cal.4th at p. 676, italics added.) Because the trial court was satisfied that Dillard's statement raised cognizable issues warranting issuance of a certificate of probable of cause, all of Dillard's cognizable claims may be heard on appeal. (See *ibid.*)

B. *Waiver of Appellate Rights*

The People assert Dillard "waived *all* appellate rights pertaining to his plea." (Italics added.) The contention is without merit. Dillard initialed a limited waiver of appeal rights that stated in part: "I give up my right to appeal the following: 1) denial of my [section] 1538.5 motion, 2) issues related to strike priors (under . . . sections 667(b)-(i) and 1170.12), and 3) any sentence stipulated herein." Here, Dillard neither challenges a ruling on a section 1538.5 motion nor issues relating to strike priors. Despite Dillard's statement in his request for certificate of probable cause that he bargained for "probation and county time," there is nothing in the plea form indicating an agreement that he would receive a certain sentence or that he would not dispute a sentence within a certain range. Rather, the form only acknowledged that Dillard faced a *maximum* sentence of four

5

years.  Furthermore, the trial court orally advised Dillard he did not make any deals with the People and could face the maximum punishment.

Finally, Dillard's challenge under *Williamson* involves his charges and prosecution, not sentencing.  Dillard's waiver of his right to appeal from any stipulated sentence does not prevent him from raising his *Williamson* or equal protection arguments.

II.  *Dillard's Prosecution on Count 1 Did Not Violate the* Williamson *Rule*

Dillard's defense counsel orally moved to reduce count 1 to a misdemeanor under *Esteybar v. Municipal Court* (1971) 5 Cal.3d 119, 128, but nothing in the record indicates counsel raised the issues Dillard seeks to challenge on appeal.  The People argue Dillard failed to raise the *Williamson* and equal protection issues in the trial court, forfeiting those challenges.  Dillard concedes his counsel's omissions, and argues the absence of a proper motion, as well as his counsel's advice that he plead guilty, amounted to constitutionally ineffective assistance.  Though Dillard's failure to raise these matters in the trial court arguably forfeits them,[4] we address them on the merits so as to evaluate Dillard's ineffective assistance of counsel claim.

---

4      A motion to dismiss is the proper method for a defendant to challenge prosecution under a general statute if a more specific statute is factually applicable.  (See e.g., *People v. Jenkins* (1980) 28 Cal.3d 494, 499; *People v. York* (1998) 60 Cal.App.4th 1499, 1502-1503.)  Failure to file the motion at trial forfeits the issue on appeal.  (See generally *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 ["[A] person who fails to preserve a claim forfeits that claim"], superseded by statute on other grounds as noted in *In re T.G.* (2015) 242 Cal.App.4th 976, 984.)  Similarly, a defendant may forfeit an equal protection claim by failing to raise or develop it in the trial court.  (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1151; but see *Wallace v. Miller* (1983) 140 Cal.App.3d 636, 645; *People v. Miranda* (2011) 199

6

Dillard contends that under *Williamson*, the statute proscribing spousal battery, section 243, subdivision (e)(1), precluded prosecution in this case for assault by means likely to produce great bodily injury (otherwise referred to as aggravated assault, see *People v. Andrews* (2015) 234 Cal.App.4th 590, 598) proscribed by section 245, subdivision (a)(4).[5]  According to Dillard, the Legislature intended misdemeanor spousal battery, which Dillard asserts is a far more specific offense with a "special relationship" requirement, to apply to defendants that engage in domestic violence but do not cause physical or "traumatic" injury.  The People respond that the *Williamson* rule did not preclude Dillard's conviction because the statutes are distinct, cover different acts, and serve different legislative purposes.  They point out that all of the elements of each statute do not correspond with the other and a violation of the spousal battery statute does not necessarily or commonly result in a violation of the aggravated assault statute.

---

Cal.App.4th 1403, 1426 [addressing merits of equal protection argument raised for the first time on appeal].)

[5]      "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars . . . , or by both the fine and imprisonment."  (§ 245, subd. (a)(4).)  "A battery is any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  When a battery is committed against a spouse, "the battery is punishable by a fine not exceeding two thousand dollars . . . , or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment."  (§ 243, subd. (e)(1).)

A.  *Legal Principles*

In *Williamson*, the court held that "where [a] general statute standing alone would include the same matter as [a] special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment."  (*Williamson*, *supra*, 43 Cal.2d at p. 654; see *People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1158.)  "Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute.  In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute."  (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86.)

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.'  [Citation.]  In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute."  (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86.)  " 'The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply.  Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and "requires us to give effect to the special provision alone

8

in the face of the dual applicability of the general provision . . . and the special provision . . . ." ' " (*Ibid*., quoting *People v. Jenkins* (1980) 28 Cal.3d 494, 505-506.) "On the other hand, if the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute. In such situations, because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely." (*Murphy*, at p. 87.)

The fact that the general statute contains an element not within the special statute does not necessarily preclude application of the *Williamson* rule. (*People v. Murphy*, *supra*, 52 Cal.4th at p. 87.) " 'It is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners of the "special" law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.' " (*Murphy*, at p. 87.)

B. *Analysis*

We do not ascertain the Legislature's intent to have the spousal abuse statute supplant the aggravated assault statute in cases where a defendant batters his wife without causing significant injury. Although there is some overlap between the conduct proscribed in the two sections, each element does not have a counterpart. A violation of

9

section 245, subdivision (a)(4) can occur without actual physical contact with the victim. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) It requires only that the defendant commit an assault "by means of force likely to produce great bodily injury." The aggravated assault statute is " 'directed at the force used, and it is immaterial whether the force actually results in any injury. The focus is on force likely to produce great bodily injury.' " (*People v. White* (2015) 241 Cal.App.4th 881, 884; see also *Aguilar*, at p. 1028.) Inversely, section 243, subdivision (e)(3) requires harmful or physical contact, but does not consider whether the force used was likely to produce great bodily injury. " ' "Any harmful or offensive touching constitutes an unlawful use of force or violence" under this statute. "It has long been established that 'the least touching' may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark." ' " (*People v. Dealba* (2015) 242 Cal.App.4th 1142, 1149, citing *People v. Shockley* (2013) 58 Cal.4th 400, 404-405.) Further, an element of section 243, subdivision (e)(1) not present in the aggravated assault statute is the requirement of a specific relationship with the victim. (See *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1324.) An assault with force likely to produce great bodily injury may be committed without committing spousal battery, and vice versa, thus the statutes, with respect to their elements, do not conflict. (See, e.g., *People v. Yeats* (1977) 66 Cal.App.3d 874, 878 [undertaking lesser included offense analysis, battery is not an offense necessarily included within assault by means of force likely to produce great bodily injury].) Because each element of the aggravated

assault statute does not correspond to an element on the face of the spousal battery statute, Dillard cannot meet the first prong of the *Williamson* rule.

Turning to the second prong of the *Williamson* rule, we cannot say a violation of the spousal battery statute necessarily or commonly also violates the aggravated assault statute.  As stated, a violation of section 243, subdivision (e)(1) requires unlawful use of force or violence, which can be manifested by " '[a]ny harmful or offensive touching' " (*People v. Shockley*, *supra*, 58 Cal.4th at p. 404) against a spouse or other person with whom the defendant holds a special relationship.  Spousal battery may be committed directly or indirectly (*People v. Dealba*, *supra*, 242 Cal.App.4th at p. 1150, 1151); it may occur from a forceful grab, a push to the ground, causing another object to touch the victim, or even a slight touching, if done in a " ' "rude or angry way." ' "  (*James v. State* (2014) 229 Cal.App.4th 130, 138.)  Nonviolent force suffices.  (*Id*. at p. 137; *Shirey v. Los Angeles County Civil Service Commission* (2013) 216 Cal.App.4th 1, 14.)  The Legislature has found "these specified crimes merit special consideration when imposing a sentence so as to display society's condemnation for these crimes of violence upon victims with whom a close relationship has been formed."  (§ 243, subd. (e)(4).)  In contrast, an aggravated assault must be committed by the use of force likely to produce great bodily injury, regardless of the nature of the relationship between the defendant and the victim.  " ' "The gravamen of the crime defined by . . . section 245 is *the likelihood that the force applied or attempted to be applied* will result in great bodily injury." ' " (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1089, overruled on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 343-344.)

11

At bottom, the question is one of Legislative intent (*People v. Cockburn*, *supra*, 109 Cal.App.4th at p. 1160), and Dillard has not shown, and we see no indication, that when the Legislature enacted section 243, subdivision (e)(4), it contemplated that spousal battery would commonly be accomplished by force likely to produce great bodily injury, barring a conviction under the general aggravated assault statute. The statutes have different purposes and requirements, one designed to protect those who share a home or child with another, making them uniquely vulnerable, and the other protecting people from others who seek to cause substantial bodily injury. We conclude this is a situation where the aggravated assault statute "contains an element that is not contained in the [spousal battery] statute," which "would not commonly occur in the context of a violation of the [spousal battery] statute" (*People v. Murphy*, *supra*, 52 Cal.4th at p. 87), preventing us from assuming the Legislature intended to preclude Dillard's prosecution for aggravated assault. The aggravated assault statute contemplates more culpable conduct, thus it is reasonable to infer that the Legislature intended to punish it more severely. (*Ibid.*) Because the *Williamson* rule does not apply, section 243, subdivision (e)(1) does not preclude prosecution under section 245, subdivision (a)(4).

III. *Dillard's Conviction and Sentence Did Not Violate His Right to Equal Protection*

*of the Law*

Dillard asserts the People violated his right to equal protection by treating him differently from similarly situated defendants who committed domestic violence but did not physically injure the victim. He maintains that by prosecuting

12

him for aggravated assault under section 245, subdivision (a)(4) rather than corporal injury to a spouse resulting in a traumatic condition (§ 273.5) or spousal battery (§ 243, subd. (e)(1)), the People deprived him of both a defense (i.e. the absence of a traumatic condition for purposes of section 273.5) and subjected him to a harsher punishment than similarly situated defendants charged under section 243, subdivision (e)(1).

A. *Legal Principles*

The right to equal protection of the laws is guaranteed by the Fourteenth Amendment to the federal Constitution and article I, section 7 of the California Constitution. "It is a fundamental principle that, '[t]o succeed on [a] claim under the equal protection clause, [a defendant] first must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) " 'Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment.' " (*People v. Superior Court* (*Manuel G.*) (2002) 104 Cal.App.4th 915, 933.) The defendant must then show the challenged classification does not bear a rational relationship to a legitimate state purpose. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199, 1200, overruled on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 875.)

In *People v. Parrish* (1985) 170 Cal.App.3d 336, the defendant argued his punishment under section 245, subdivision (a), combined with imposition of an enhancement for inflicting great bodily under section 12022.7, constituted double

13

punishment, because the former punished attempted aggravated battery while the latter punished a completed aggravated battery. (*Id*. at p. 343.) The defendant also maintained his punishment violated his equal protection rights because his punishment under section 245, subdivision (a) exceeded the maximum sentence for battery with great bodily injury under section 243, subdivision (d)[6] despite the fact those two sections were functionally equivalent. (*Id.* at p. 345.)

In rejecting the defendant's double punishment argument, the appellate court recognized section 245, subdivision (a) "defines a crime which is separate and distinct from the battery crimes contained in Penal Code section 243." (*People v. Parrish*, *supra*, 170 Cal.App.4th at p. 343.) "Punishment under section 245, subdivision (a), is directed at the force used, and it is immaterial whether the force actually results in any injury. The focus is on force likely to produce great bodily injury. [Citation.] [¶] Infliction of great bodily injury is not an element of assault by means likely to produce great bodily injury. The penalty for assault does not contemplate punishment for the infliction of great bodily injury. [Citation.] Where assault by means of force likely to produce great bodily injury has occurred, the assault itself represents a completed crime due to the use of the force. [Citation.] [¶] Thus, when one is convicted under Penal Code section 245, subdivision (a), he may also be convicted of battery." (*Ibid.*)

---

6     Section 243, subdivision (d) provides: "When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."

14

The court concluded the defendant's equal protection challenged lacked merit on similar grounds. (*People v. Parrish*, *supra*, 170 Cal.App.4th at p. 345.) "[T]he two statutes do not constitute punishment for the same offense and differ in their essential purpose. Section 245, subdivision (a), punishes conduct where extreme force is used, while section 243 punishes the consequences. The fact that actual injury does occur in the course of an assault by means of force likely to produce serious injury, and thus may also be punished under Penal Code section 12022.7, does not alter the basic difference between sections 243 and 245, subdivision (a). [Citation.] [¶] Thus, while a violation of Penal Code section 245, subdivision (a), and battery both include elements of simple assault, a violation of Penal Code section 245, subdivision (a), is a greater offense than and separate and distinct from either simple assault or battery. . . . [¶] Because [those two sections] do not proscribe conduct which is functionally equivalent, persons charged with violations of these statutes are not similarly situated. Thus, appellant's equal protection challenge must fail." (*Parrish*, at p. 345.)

B. *Analysis*

Assault by means likely to produce great bodily injury under section 245, subdivision (a)(4) is separate and distinct from battery crimes under section 243. (*People v. Parrish*, *supra*, 170 Cal.App.3d at p. 343.) Section 245, subdivision (a)(4) focuses on conduct against another person likely to produce great bodily injury regardless of actual contact or injury, while section 243, subdivision (e) focuses on harmful or offensive contact against a person with whom the defendant shares a special relationship. Moreover, a defendant can be convicted under both statutes in the same case. (*Parrish*, at

15

p. 343 [sections 243 and 245, subdivision (a)(4) are separate offenses]; see also *People v. Morgan* (1997) 58 Cal.App.4th 1210, 1211 [defendant convicted of two counts under section 245, subdivision (a)(1) and one count under section 243, subdivision (e)].)  We conclude a defendant charged under section 245, subdivision (a) and a defendant charged under section 243, subdivision (e) are not similarly situated.

Dillard also asserts the People's decision not to prosecute him under section 273.5 deprived him of the "traumatic condition" defense available to those accused of that crime, and he speculates the People considered his two prior criminal convictions involving domestic violence in treating him differently from similarly situated defendants.  Even if Dillard's conduct fell under section 273.5, the United States Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."  (*United States v. Batchelder* (1979) 442 U.S. 114, 123-124.)  In the absence of any showing that the prosecutor's exercise of discretion is based on any unjustifiable standard such as race, religion or other arbitrary classification, and Dillard made no such showing here, the existence of prosecutorial discretion does not violate either due process or equal protection principles.  (*Davis v. Municipal Court* (1988) 46 Cal.3d 64, 87-88, quoting *Batchelder*, at p. 125, fn. 9 ["The Equal Protection Clause prohibits selective enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification' "].)  Even if the People charged Dillard under section 245, subdivision (a) to pursue the greater punishment, Dillard's argument fails because although "[t]he prosecutor may be influenced by the penalties available upon

16

conviction . . . this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." (*Id.* at p. 125.) "Just as a defendant has no constitutional right to elect which of two applicable . . . statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced." (*Ibid*.) "Prosecutors have great discretion in filing criminal charges. [Citation.] This discretion includes the choice of maximizing the available sentence (including charging of enhancements) to which a defendant might be exposed in the event of conviction [citations] and the timing of filing unrelated charges [citations]. Such discretion does not violate equal protection." (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 15, overruling recognized in *In re Johnson* (2016) ___ Cal.App.4th ___ [2016 WL 1587254 *7].) For the foregoing reasons, we conclude Dillard's equal protection argument lacks merit.

IV. *Dillard Has Not Shown His Counsel Rendered Ineffective Assistance*

A. *Legal Principles*

The applicable standards are well settled: " 'An ineffective assistance claim has two components: A defendant must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.] [¶] . . . [¶] 'To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." ' " (*In re Welch* (2015) 61 Cal.4th 489, 514.) In evaluating counsel's conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

17

challenged action 'might be considered sound trial strategy.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 689.)  "In order to establish prejudice, a defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]  A defendant 'need not show that counsel's deficient conduct more likely than not altered the outcome in the case.' [Citation.]  Rather, he must show 'a probability sufficient to undermine confidence in the outcome.' " (*In re Welch,* at p. 517; see also *People v. Kipp* (1998) 18 Cal.4th 349, 366 [prejudice shown if counsel's deficient performance " 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result' "].)

Rarely will an appellate record establish ineffective assistance of counsel.  (*People v. Thompson* (2010) 49 Cal.4th 79, 122; see also *People v. Montiel* (1993) 5 Cal.4th 877, 911 [to resolve such a claim on direct appeal, the record must make *clear* the challenged act was outside the range of reasonable competence].)  Where " ' " 'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." ' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 982.)  "Further, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will

often be so, that course should be followed.' " (*Ibid.*, quoting *Strickland v. Washington, supra,* 466 U.S. at p. 697.)

B. *Analysis*

Having concluded the People did not violate the *Williamson* rule and Dillard's equal protection challenge lacks merit, Dillard cannot show his defense counsel rendered ineffective assistance by failing to raise those issues below. "Failure to raise a meritless objection is not ineffective assistance of counsel." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90; see also *People v. Jones* (1998) 17 Cal.4th 279, 309.)

We find no other bases to conclude Dillard's counsel was constitutionally deficient for advising him to plead guilty. On that point, Dillard contends that the evidence was insufficient to prove he committed aggravated assault, and he was deprived of the opportunity to present a defense (i.e., that his position in the vehicle prevented him from having a present ability to inflict great bodily injury to Sandoval) or an expert to testify about the fallibility of eyewitness testimony. But "[a] defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel." (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.)

Finally, we agree with the People that Dillard has made no attempt to show prejudice resulting from his guilty plea. A defendant's "self-serving" assertion that he or she would not have pleaded guilty had he or she received adequate representation and

19

advice "is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.  A contrary holding would lead to an unchecked flow of easily fabricated claims."  (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 938.)  Because Dillard presents no independent evidence to establish he would not have taken the plea deal, he has not shown prejudice.  For that reason alone, Dillard's ineffective assistance claim fails.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

20